## KELLEY et al. v. T. L. SMITH CO. et al.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1912.)

No. 1,787.

1. APPEARANCE (§ 9*)—GENERAL OR SPECIAL—WAIVER OF OBJECTIONS.

A special appearance by defendants to object to jurisdiction over their persons was not converted into a general appearance, which waived such objection, by the filing of a demurrer alleging the additional ground that the court had no jurisdiction of the subject-matter of the suit.

[Ed. Note.—For other cases, see Appearance, Cent. Dig. §§ 42–52; Dec. Dig. § 9.*]

2. COURTS (§ 262*)—JURISDICTION—OPPRESSIVE SUITS AGAINST OFFICER OF CORPORATION.

A federal court of equity has jurisdiction of the subject-matter of a suit by a corporation and its secretary to enjoin the prosecution of a suit against the secretary by a stockholder and his assignee, to compel the transfer of stock on the books, where other suits were pending in different courts by a trustee in bankruptcy against the corporation and such stockholder to compel the transfer of the same stock to the trustee on the ground that it was equitably the property of the bankrupt and to enjoin its transfer by the company.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 797, 798; Dec. Dig. § 262.*

Enjoining proceedings in state courts, see notes to Garner v. Second Nat. Bank of Providence, 16 C. C. A. 90; Central Trust Co. of New York v. Grantham, 27 C. C. A. 575; Copeland v. Bruning, 63 C. C. A. 437.]

---

**8.** PROCESS (§ 80*)—SUBSTITUTED SERVICE IN FEDERAL COURTS—SUIT TO EN-
JOIN PROSECUTION OF ACTION BY NONRESIDENT DEFENDANTS.

Where, in such case, the defendants were both nonresidents of the state
and absent therefrom, but the stock certificate was in possession of their
attorneys therein, who represented them in the action against the secre-
tary. Equity Rule 90 (29 Sup. Ct. xxxvii) applied, which provides that in
cases not covered by the rules the practice shall be regulated by the
then practice of the High Court of Chancery in England, and under such
practice service was properly made on such attorneys.

[Ed. Note.—For other cases, see Process, Cent. Dig. § 92; Dec. Dig. §
80.*]

Appeal from the Circuit Court of the United States for the East-
ern District of Wisconsin.

Suit in equity by T. L. Smith Company and others against E. B.
Kelley and another. Defendants appeal from orders overruling a
motion to quash the service and a demurrer. Affirmed.

From an interlocutory injunction restraining appellants and their agents
and attorneys, until the further order of the court, from prosecuting an ac-
tion against appellee Buckley, as secretary of appellee T. L. Smith Company,
brought and pending in the circuit court of Milwaukee county, Wis., this ap-
peal was taken.

In the bill and showing on which the injunction was granted the following
facts appear:

Contractors' Supply Company, an Illinois corporation, was adjudicated a
bankrupt in the District Court for the Northern District of Illinois and ap-
pellee American Trust & Savings Bank was appointed trustee.

In August, 1909, the trustee, an Illinois corporation, filed a bill against T.
L. Smith Company, a Wisconsin corporation, and T. L. Smith, a Wisconsin
citizen, in the Circuit Court for the Eastern District of Wisconsin. This bill
alleged that Contractors' Supply Company became insolvent by reason of
a conspiracy whereby Smith and other directors of Contractors' Supply Com-
pany, including appellant Kelley, a New York citizen, caused the principal
assets of Contractors' Supply Company to be conveyed to T. L. Smith Com-
pany, of which Smith was president, and caused T. L. Smith Company to
pay for such assets by turning over to certain directors of Contractors' Sup-
ply Company certain sums in money and by issuing stock of T. L. Smith
Company to Smith (142 shares) and to appellant Kelley (105 shares) and to
other directors other shares; that the trustee demanded of Smith that he
assign and deliver to it all of said shares that he had in his possession or
under his control and account for the remainder of the stock and all of the
cash received by his co-conspirators; and that Smith refused. Prayer, that
Smith be decreed to transfer to the trustee "the shares of stock issued to
him" and to account "for all the stock and cash divided among the various
stockholders of Contractors' Supply Company"; that the shares of said
stockholders be transferred "in case the same can be done" to the trustee
upon the books of T. L. Smith Company; that Smith and T. L. Smith Com-
pany be enjoined in the meantime "from transferring any portion of said
stock to any person other than your orator"; and that any transfer upon the
books of T. L. Smith Company of "any of the shares of stock mentioned in
the foregoing bill" be forbidden until the further order of the court. No
restraining order is shown to have been made. Defendants Smith and T.
L. Smith Company appeared, and the case is at issue, undetermined.

A bill of the same nature was filed in February, 1910, in the circuit court
of Cook county, Ill., by the trustee against appellant Kelley and T. L. Smith
Company, counting on the same conspiracy, making the same demand on
Kelley that had been made on Smith in the above-described suit, and asking
the same relief. No restraining order is shown to have been made. De-
fendants Kelley and T. L. Smith Company appeared, and the case is at issue,
undetermined.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In June, 1910, appellants Kelley and McConnell, the latter an Illinois citizen, instituted in the circuit court of Milwaukee county, Wis, their suit against appellee Buckley, a Wisconsin citizen, as secretary of T. L. Smith Company, to compel him to transfer on the books of T. L. Smith Company certificate No. 7 for 105 shares then standing in the name of Kelley to McConnell as assignee of Kelley. These were the same 105 shares that were named in the above-described suits by the trustee. In this proceeding against Buckley as secretary, Kelley and McConnell were represented by the firm of Winkler, Flanders, Bottum & Fawsett of Milwaukee, Wis., as their attorneys of record. And before the proceeding was begun E. J. Geittman, an attorney at law connected with said firm, was in the possession of said certificate No. 7 and as agent of McConnell had presented the certificate to Buckley and demanded that the ownership of the shares be transferred on the books to his principal.

Thereupon T. L. Smith Company and Buckley as its secretary filed the bill on which the decree appealed from was entered. After setting forth the above-stated situation, they averred that both Kelley and McConnell, before starting their proceeding against Secretary Buckley, knew of the pendency of the suits in which the trustee was asserting full equitable title to the same shares; that the proceeding against Buckley "is an interference with the jurisdiction of this honorable court heretofore assumed in the suit of American Trust & Savings Bank, as trustee in bankruptcy, against Smith and T. L. Smith Company"; that through the acts of Kelley, American Trust & Savings Bank on the one hand and Kelley and McConnell on the other are insisting in different courts that complainants transfer the same shares to each; that if complainants comply with the demand of either they will be unable to transfer the shares to the other if so ordered by a court decree; that they have no interest in the shares and are willing to transfer them to the party who is found to be the owner.

On the showing that Kelley and McConnell were citizens of New York and Illinois, respectively, that they were not to be found in the district, that the stock certificate was within the district and in the hands of attorneys and agent resident of the district who had authority to assert and were pressing the rights of Kelley and McConnell in the stock, the court ordered the subpœna and the notice of application for an interlocutory injunction to be served on said attorneys and agent. And the subpœna and notice were so served.

Appellants appeared specially by said attorneys and moved unsuccessfully to quash the service.

Thereafter appellants, "appearing specially and solely for the purpose of this demurrer," as ground therefor alleged that the court "has no jurisdiction over these defendants" because: First, "neither of these defendants is a citizen of Wisconsin nor a resident of the Eastern district thereof"; and, second, complainants have no interest in the subject-matter of this suit and are merely endeavoring "to compel these defendants to appear and interplead with the American Trust & Savings Bank" in its suit against Smith and T. L. Smith Company, now pending in this court, and that "this court has no jurisdiction over these defendants in a suit so brought by said American Trust & Savings Bank in said Eastern district of Wisconsin." This demurrer was overruled.

On this record appellants have made but one assignment, namely, that the court erred in taking jurisdiction of their persons on the aforesaid service of subpœna and notice.

Charles Monroe, for appellants.

A. W. Fairchild, for appellees.

Before BAKER and SEAMAN, Circuit Judges, and CARPENTER, District Judge.

BAKER, Circuit Judge (after stating the facts as above). [1] Appellees T. L. Smith Company and Buckley contend that the alleged error was waived through appellants' having made a general

appearance by their demurrer. But when appellants added to their challenge of the court's jurisdiction over their persons a further challenge of the court's jurisdiction over the subject-matter, we do not think that they thereby converted their special into a general appearance, abandoned their objections to the service of subpœna and notice, and asked the court to assume jurisdiction and determine the sufficiency of the bill. Clearly the intent was to urge only objections to jurisdiction.

That substituted service was proper practice in this case is urged on the claim that this is an ancillary proceeding in aid of the court's jurisdiction in the pending suit of American Trust & Savings Bank, as trustee in bankruptcy, against Smith and T. L. Smith Company. True, the trustee prayed that T. L. Smith Company be enjoined from transferring on its books not only the Smith stock but also that of other co-conspirators who were not parties to the suit. But the prayer should be read in the light of the allegations of the bill. Therein the only demand, on account of the refusal of which the suit was instituted, was upon Smith to turn over to the trustee the stock in his possession or under his control (with no allegation that the Kelley stock was either) and to account to the trustee for the remainder of the stock and all the cash taken by the joint tort-feasors. Kelley was not a party to this suit. Just how the court, without violating familiar principles, could proceed in Kelley's absence to adjudge that he had no title to the 105 shares and that the true title was in the trustee in bankruptcy, and to order T. L. Smith Company to transfer those shares on its books to the trustee, is not perceived. In the circuit court of Cook county, Ill., the trustee was holding Kelley to show why these shares should not be turned over to the trustee and why additionally he should not pay for his part in the conspiracy. If the present proceeding was in aid of the jurisdiction of any court, it was of the Cook county court and not of the United States Circuit Court for the Eastern District of Wisconsin.

Jurisdiction can be sustained only on the grounds: First, that the bill, not as a bill for the protection of the jurisdiction of any court, but as an independent and original bill for the protection of some equitable right existent in complainants, presented a subject-matter cognizable in a Circuit Court of the United States; and, second, the suit being in personam, that the court acquired jurisdiction of the persons of the defendants.

[2] That T. L. Smith Company and its secretary, having no interest in the 105 shares, but being under a duty to recognize the rights of the lawful owner, should be pressed on the one hand by a suit in which the trustee in bankruptcy and T. L. Smith Company and Kelley were parties, and on the other hand by a suit in which Kelley, his assignee, and the secretary of T. L. Smith Company were parties, but in which the trustee, the other claimant, was not a party, presented as subject-matter an equitable right to protection from harassment and jeopardy. Impending danger came to T. L. Smith Company, a Wisconsin corporation having its office and records in the Eastern District, from the acts of appellants' agents who in that district were

in possession of the stock certificate and were asserting appellants' rights of ownership. Equally with the local courts, the Circuit Court for the Eastern District of Wisconsin, if the requisite amount in controversy and diversity of citizenship appear, has jurisdiction of equitable subject-matters. Diversity of citizenship and due amount were alleged, and the matter was of equitable cognizance; but, of course, neither the sufficiency of the bill nor the legality of the injunction is considered.

[3] Appellants insist that on the question of service Equity Rule 13 (29 Sup. Ct. xxvi) is controlling, as follows:

"The service of all subpœnas shall be a delivery of a copy thereof by the officer serving the same to the defendant personally, or by leaving a copy thereof at the dwelling house or usual abode of each defendant with some adult person who is a member or resident in the family."

On the other hand, appellees present Equity Rule 90 (29 Sup. Ct. xxxvii) as applicable:

"In all cases where the rules prescribed by this court or by the Circuit Court do not apply, the practice of the Circuit Court shall be regulated by the present practice of the High Court of Chancery in England, so far as the same may reasonably be applied consistently with° the local circumstances and local conveniences of the district where the court is held, not as positive rules, but as furnishing just analogies to regulate the practice."

Congressional authority for the Equity Rules is found in section 913 of the Revised Statutes (U. S. Comp. St. 1901, p. 683).

English chancery practice as it existed at the time of the adoption of this rule (March 2, 1842; Thomson v. Wooster, 114 U. S. 104, 5 Sup. Ct. 788, 29 L. Ed. 105) is thus described in Daniell on Chancery Practice (2d Am. Ed.) p. 518:

"The jurisdiction (on substituted service) is most frequently exerted where actions at law are brought by persons resident abroad to enforce demands which, although they have, strictly speaking, a legal right to make, it is against the principles of equity to permit it. In such cases, the court will interfere by injunction served upon the attorney employed in this country to conduct the proceedings at law, to restrain further prosecution of such proceedings until his employer has submitted himself to the jurisdiction. In order to accomplish this purpose, it is permitted to the plaintiff in equity, in the first instance, to obtain an order directing that service of the subpœna upon the attorney employed in the cause at law shall be deemed good service."

And Daniell's text seems to be amply sustained by Hobhouse v. Courtney, 12 Simon's Chan. Rep. 140 (reviewing Hales v. Sutton [decided in 1716] 1 Dick. 26; Carter v. De Brune [1722] 1 Dick. 39; Hyde v. Forster & Myers [1745] 1 Dick. 102; Id., 2 Mer. 459, note; and Geledneki v. Charnock [1801] 6 Ves. 171); Murray v. Vipart, 1 Phillips' Chan. Rep. 521; Hope v. Hope, 4 Deg., MacN. & G. Chan. Rep. 328.

In the last-cited case the bill was brought by the Hope children, through their next friend, to require their custody to be transferred from their mother, residing in France, to their father, residing in England. Before their bill was filed, Mrs. Hope through a firm of English solicitors had begun in the English Ecclesiastical Court a suit for divorce from Mr. Hope. This divorce suit was pending, and the

Chancery Court ordered that service in the children's suit against Mrs. Hope be made upon her solicitors who were prosecuting her divorce case in the Ecclesiastical Court. Said the Lord Chancellor:

"According to the rules of law, service ought either to be made personally, or at least by leaving notice at the dwelling house of the party. But the rule of this court differs in this respect from that of a court of law. Personal service, or service at the dwelling house, may be impossible, because the defendant may be abroad; and yet it might be very unfit that he should not be litigated with in the same manner as if he were here, as he might have agents competent to represent and actually representing him in this country. Therefore, in cases where a defendant is abroad, the question is whether there is any person here who may be fitly served, and service upon whom may be treated as equivalent to service upon the absent person himself. Now, this has been allowed in a variety of cases; for instance, where there has been an agent in this country, managing all the affairs of a defendant who is abroad, and regularly communicating with him upon his affairs, or where he has an agent specially managing the particular matter involved in the suit. In such cases, the court has felt that it might safely allow service upon the agent to be deemed good service upon the person abroad, because the inference is irresistible that service so made upon the agent is service on a person either impliedly authorized to accept that particular service, or who certainly will communicate the process so served to the party who is not in this country to receive it himself. The object of all service is, of course, only to give notice to the party on whom it is made, so that he may be made aware of and may be able to resist that which is sought against him; and when that has been substantially done, so that the court may feel perfectly confident that service has reached him, everything has been done that is required. Now, in this case, Messrs. Grover & Coare were the solicitors of Mrs. Hope in the proceedings which she instituted in the Ecclesiastical Court against her husband to obtain a divorce."

\* \* \* \* \* \* \* \* \*

"Under all the circumstances, my opinion is that the service upon Messrs. Grover & Coare was a perfectly good service, and that the order of the Master of the Rolls was strictly correct; because in such a case you are not to look at the mere form of service, but to the substance. It is true that their being Mrs. Hope's agents with reference to the suit for the divorce does not necessarily imply that they were her agents with regard to the question of the custody of the children, but it is impossible not to see that they were acting for her on the question of her separation from her husband; and that question being one which in France, where Mrs. Hope is residing, has incident to it the further question respecting the custody of the children, it is impossible to suppose that Messrs. Grover & Coare did not communicate with her. Indeed, all doubt on that point is excluded by the evidence."

It will be observed that Mrs. Hope's divorce suit did not directly involve the question of the custody of the children, and therefore that subject-matter was not explicitly within the solicitors' agency. But in this case appellants' agents had possession of the certificates and were asserting with authority appellants' rights to the stock. It is inconceivable that notice to them and an injunction running against them as appellants' agents would not in fact be as effective a notice as if the subpœna and motion for injunction had been served upon appellants personally in Milwaukee and as if the injunction had run against appellants alone.

In our judgment Equity Rule 90 applies, and the decree is, accordingly, affirmed.