# RYAN *v.* McADOO.

EQUITY; SPECIAL APPEARANCE; EXECUTORS AND ADMINISTRATORS; MOTIONS TO DISMISS.

1. The nature of the action will be ascertained from the pleadings, and if it appear that the defendant, described as an executor, was sued as such, and not in his individual capacity, the court will so determine.

2. In a suit to enforce a contract made by the defendant as executor to pay the plaintiff's testate an attorney's fee and to establish a lien therefor against a treasury warrant issued to the defendant as executor, in settlement of a claim of his estate against the government, it was *held* that the suit was against the defendant as executor, and not in his individual capacity.

3. Under equity rule 32 of the supreme court of the District of Columbia (in substance the same as equity rule 29 of the Supreme Court of the United States), abolishing demurrers and pleas and requiring that every defense in point of law shall be made by motion to dismiss, every such defense must be incorporated in a single motion to dismiss.

4. Where one of the grounds assigned in a motion by a defendant to dismiss a bill in equity is that the court has no jurisdiction over his person, the inclusion in the motion of other grounds, involving the question of the jurisdiction of the court over the subject-matter of the suit, will not constitute the entry by the defendant of a general appearance and a waiver of his objecion to the jurisdiction over his person. Under such circumstances, however, the court will first dispose of the latter objection.

5. A suit is not maintainable in this jurisdiction against a foreign executor in his representative capacity. (Following *Bryan* v. *Curtis*, 30
    App. D. C. 234.)

No. 2966.   Submitted December 8, 1916.   Decided February 5, 1917.

HEARING on an appeal by the plaintiff from a judgment of
the Supreme Court of the District of Columbia sustaining motions to dismiss a bill in equity to establish a lien against a treasury warrant.                                    *Affirmed.*

The Court in the opinion stated the facts as follows:

Appellant, Grace L. Ryan, hereafter referred to as plaintiff.
as executrix of the estate of her husband, Martin A. Ryan, filed
a bill in equity in the supreme court of the District of Columbia against defendants, William G. McAdoo, Secretary of the
Treasury, John Burke, Treasurer of the United States, and
Frank Wells, executor of the estate of Samuel M. Church, deceased, to have a lien declared against a warrant issued by the
United States to defendant Wells, as surviving executor of the
estate of one Samuel M. Church.

It appears that plaintiff's testator, a practising lawyer in
New York, in July, 1904, entered into a contract with defendant Wells, as executor, to collect, upon a contingent fee of 50
per cent, less expenses and costs, from the United States, certain inheritance taxes paid by Wells upon the Church estate
under the Internal Revenue Act of 1898.   The contract provides for the prosecution of the claims by Ryan; that he will
pay all costs and expenses; that he will present all papers to
Wells for changes or alterations before filing; and that, "if the
party of the second part succeeds in recovering, by suit or otherwise, said claim or fund, or a portion thereof, he shall be entitled to one half thereof for his services, and out of his one
half of said sum so recovered shall be deducted and paid all
costs and disbursements." It also provides "that if the claim
is one that the parties of the first part do not desire to prosecute, then this contract is null and void."

It is averred that Ryan proceeded diligently with the presentation and prosecution of the claim until July 29, 1903, when Wells wrote him, annulling and canceling the contract, and stating that he had written the Internal Revenue Bureau at Washington withdrawing the claim and directing that no further proceedings be had in the case. It is also averred that plaintiff and her testator relied upon the statement of Wells that he in good faith had exercised his option reserved in the contract and had withdrawn said claim, until within two days of the date of filing this suit, when plaintiff discovered that the claim had not been withdrawn or prosecution discontinued, but that Wells had employed other counsel, at a much less contingent fee, who had continued to successful conclusion the prosecution of the claim originally filed by Ryan, and that, as a result thereof, a warrant had been issued to Wells, as executor, on September 13, 1915, by the United States for the sum of $114,342.62, and delivered to Wells, as executor, and is now in his possession in the State of New York.

Plaintiff prays for a decree declaring defendant Wells's pretended annulment of the contract fraudulent and void, and that she may recover the amount sued for,—$57,171.31,—"and be given a lien therefor upon said fund in the Treasury of the United States, appropriated for the payment of this claim, and upon said warrant in settlement thereof," and that each of the defendants be enjoined, pending suit, "from cashing, collecting, or paying said Treasury warrant, and from otherwise paying to the said defendant Wells the said sum allowed in settlement of said claim, and that a receiver be appointed to hold same during the pending of this suit," with the general prayer "for such other and further relief as justice and equity may require."

Defendant Wells appeared specially, and moved to dismiss the bill on the grounds—(1) that plaintiff and defendant Wells were appointed executrix and executor of the respective estates of Ryan and Church in New York State, "and that this defendant is therefore a foreign executor and is not subject to the jurisdiction of this court in these proceedings;" (2) that the

warrant, the subject-matter of litigation, is in the State of New York, and the court is without jurisdiction to make any order respecting it; (3) that plaintiff's remedy, if at all, is at law; and (4) "that it does not appear from said amended bill that the plaintiff is a judgment creditor, or that he has a valid lien upon the fund in question, or that this defendant is insolvent, or any other sufficient ground for the interposition of a court of equity."

Defendants McAdoo and Burke appeared specially, and moved to dismiss the bill on the following grounds: "(1) It appears by the allegations of the amended bill that the principal defendant, Frank Wells, is a nonresident; that the fund in suit has no legal situs in the District of Columbia, and that the draft representing the same is not within the jurisdiction of the court. (2) That the plaintiff's title to equitable relief, if any, is based upon a lien created in violation of section 3477 of the Revised Statutes of the United States (Comp. Stat. 1916, Sec. 6383), and these defendants claim the benefit of said statute. (3) It appears by the allegations of the bill that the plaintiff has a plain, adequate, and complete remedy at law. (4) There is no equity in the bill."

On hearing, the court sustained the motions and entered a decree dismissing the bill. From this order, the case comes here on appeal.

*Mr. J. H. Ralston* and *Mr. Wm. E. Richardson,* for the appellant.

1. When the defendant Wells moved to dismiss this suit upon the ground of general lack of equity, he submitted to the determination of the court a question the power to adjudicate which presupposed the existence before the court of the parties interested therein. *Newark Sav. Trust* v. *Jones,* 35 N. J. Eq. 406; *Lumber Co.* v. *Cornell,* 85 Neb. 468; *Lillie* v. *M. W. A.* 89 Neb. 1; *Edgell* v. *Edgell,* 84 Fed. 69.

2. The defendant Wells is sued on his individual promise— "he, not the testator, made the contract and is personally liable

on it, with the right to take credit in his accounts for any payment under it. *Taylor* v. *Beamiss,* 110 U. S. 42."

3. The obligation which is the foundation of the pending action did not arise directly or indirectly from any transactions with the decedent. The claim which was the subject-matter of the contract was for refund of an inheritance tax improperly paid by the executor. It was undoubtedly paid out of moneys of the estate in the hands of the executor; when refunded the net proceeds would undoubtedly be returned to the funds of the estate, and the executor would be entitled to credit for attorneys' fees incurred, but no suit on the contract could have been maintained against the estate in New York or elsewhere, and no judgment rendered against Wells except *de bonis propriis.* 18 Cyc. 881, 882. See also *Austin* v. *Munro,* 47 N. Y. 360; *O'Brien* v. *Jackson,* 167 N. Y. 31; *Pipe* v. *Thomas,* 62 Ark. 223; *Genet* v. *De Graaf,* 50 N. Y. Supp. 442; *Johnson* v. *Wallis,* 112 N. Y. 230; *Moore* v. *Petty,* 135 Fed. 668; *Spotswood* v. *Bentley,* 132 Ala. 266; *Sumner* v. *Williams,* 8 Mass. 162; *Walker* v. *Patterson,* 36 Me. 273; *Lewis* v. *McCabe,* 6 Mo. App. 600; *Taylor* v. *Benham,* 5 How. 233.

*Mr. John E. Laskey,* United States District Attorney, and *Mr. Mabry C. Van Fleet,* Special Assistant, for the appellees, McAdoo and Burke, and *Mr. Arthur Peter* for the appellee Wells.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

We think it unnecessary to consider all the assignments of error, as the appeal can be disposed of upon the single question of jurisdiction. Wells is not sued individually, but as executor. An attempt is made to shift the suit to one against Wells individually. But the court will determine the nature of the action from the pleadings, and not from the statement of counsel. Undoubtedly, Wells personally could have employed counsel to have prosecuted this claim, paid for the same, and been reimbursed from the funds of the estate; but according to the aver-

ments of the bill, that was not what was done.  The contract, which is the basis of the suit, was made by Wells as executor and signed by him as such.  Not only is Wells described in the title of the suit as "executor of the estate of Samuel M. Church, deceased," but he is so described in the body of the bill, together with an averment setting forth the time and place of his appointment, the name of the court, and the facts that the other executor is now deceased, and that the warrant was issued "payable to the order of said executor," was delivered to "said executor," and is under the control of "said executor."  It was not pretended at the inception of the suit that recovery was sought against Wells personally.  It is conceded that the warrant and fund belong to the estate.  It was the money of the estate which wrongfully went into the Treasury, and the allowance of the claim is to reimburse the estate.  The lien is sought against the warrant and the fund, not against the property of Wells.  The averments of the bill amount to more than a mere description of the person.  It sets Wells forth in his official representative capacity.  As was said by the court in *Austin* v. *Munro,* 47 N. Y. 360: "The action is against them as executors, and not as individuals.  They are not merely described as executors by the simple addition of that title to their names, in which case the addition might be regarded as a description of the persons and a judgment authorized against them individually (*Merritt* v. *Seaman,* 6 N. Y. 168), but they are sued *as* executors.  In the entitling of the summons and complaint, the action is stated to be against the defendants 'as executors,' etc.  The agreement is avererd to have been made by the defendants 'as executors,' and the provision is 'that the defendants, as executors, would then pay the plaintiffs,' etc., and the demand of relief is for 'judgment against the defendants as executors,' etc.  The form of the complaint, and the substantive averments therein, as well as the form of the judgment demanded, characterize the action as against the defendants in their representative capacity, and not against them individually.  A judgment for the plaintiffs, following the complaint, would be against the defendants as executors, for damages and costs to be   levied *de*

*bonis testatoris.* The word 'as,' prefixed to the title of the defendants, indicates the character in which they are sued. (*Chouteau* v. *Suydam,* 21 N. Y. 179; *Henshall* v. *Roberts,* 5 East, 150, 102 Eng. Reprint, 1026; *Cowell* v. *Watts,* 6 East. 405, 102 Eng. Reprint, 1342.) The action cannot be converted into one against the defendants individually, by the judgment of the court on the demurrer."

The court below held that since Wells, by including in his motion to dismiss, in addition to his objection to the jurisdiction of the court over the person of a foreign executor, the question of the jurisdiction of the subject-matter and the want of equity, entered a general appearance. In other words, the court held that Wells, by moving to dismiss for want of equity, entered an appearance for all purposes, thereby waiving his challenge to the jurisdiction of his person. Undoubtedly, under the former system of procedure in equity, such an appearance was construed to be general. The rule, however, has not been steadily adhered to by later authorities. In Foster's Federal Practice, 5th ed. vol. 1, p. 609, the modern rule is announced as follows: "The later authorities hold that when an objection to the jurisdiction over the person of the defendant is filed with a formal appearance the latter will be considered to be special and not general, and that a party may file a special appearance with an objection to the jurisdiction over his person joined with other objections, such as want of equity, or a want of jurisdiction over the subject-matter of the suit, without submitting to the jurisdiction of the court."

This statement by Foster is, since the adoption of the new rules of equity, procedure for the Federal courts by the Supreme Court of the United States. But it seems to have become the practice of the Federal courts before the adoption of the new rules. In *Davidson Bros. Marble Co.* v. *United States,* 213 U. S. 10, 53 L. ed. 675, 29 Sup. Ct. Rep. 324, both a demurrer and a motion to quash the service were filed. In each, objection was made to the jurisdiction of the court over the person of the defendant and the lack of jurisdiction of the subject-matter of the suit. The court was there considering the

validity of a rule of court which permitted a special appearance to the jurisdiction only upon condition that, if the court held that it had jurisdiction, the litigant should waive objection and enter a general appearance. Denying the power of the court to make and enforce such a rule, in view of the statute fixing the jurisdiction of the circuit courts, the court, holding that defendant had a right to appear specially to object to the jurisdiction, said: "It follows, therefore, that the court below was without jurisdiction of this cause, and as the defendants have taken no action whatever in response to the summons, except to appear specially and object to the jurisdiction, it cannot possibly be said that the objection to the jurisdiction has been waived. \* \* \* The defendant appeared specially, as they had a right to do, solely for the purpose of objecting to the jurisdiction. They were not bound to agree to submit their objection to the final decision of the judge of the circuit court, and the rule of court which treated the special appearance, without such an agreement, as a general appearance, was invalid."

In *Southern P. Co.* v. *Arlington Heights Fruit Co.* 11 C. C. A. 581, 191 Fed. 101, a rate case, the defendants interposed a plea to the jurisdiction, on the grounds that the court was without jurisdiction of the parties defendant, and that it was without jurisdiction of the subject-matter, in that it could not determine the question of the reasonableness or the unreasonableness of a rate in advance of a ruling by the Interstate Commerce Commission. Other grounds for lack of jurisdiction of the subject-matter by a court of equity were set up. It was contended, as here, that the plea amounted to a general appearance. The court, after reviewing the modern trend of decision, concluded as follows: "In the case at bar all three of the grounds assigned by the plea went to the jurisdiction of the court in one sense,—the first to the jurisdiction over the person, and the last two to the jurisdiction of the court as a court of equity. In either case, if the plea was well taken, the bill of complaint would have to be dismissed, but the court could not proceed to a ruling upon the two latter objections without

first entertaining jurisdiction of the person. Now, if it be that the defendants have confused the kind of jurisdiction they were insisting upon, as might well happen, or believed they had a legal right to combine the objections, it nevertheless appears that it was distinctly their purpose to appear specially in the first instance with a view of raising the jurisdictional question, to be disposed of before the merits were reached. We are therefore of the opinion that under such circumstances the defendants have not waived their personal privilege of being sued within their own district."

In *Kelley* v. *T. L. Smith Co.* 116 C. C. A. 240, 196 Fed. 466, the court, considering a demurrer specially challenging the jurisdiction of the court as to both the person and subject-matter of the suit, said: "But when appellants added to their challenge of the court's jurisdiction over their persons a further challenge of the court's jurisdiction over the subject-matter, we do not think that they thereby converted their special into a general appearance, abandoned their objections to the service of subpœna and notice, and asked the court to assume jurisdiction and determine the sufficiency of the bill. Clearly the intent was to urge only objections to jurisdiction."

It will be observed that the rule announced by Foster is well fortified by the modern trend of Federal decision prior to the adoption of the new rules of equity procedure by the Supreme Court. These rules were authorized by act of Congress. Prior to their adoption special appearance for the purpose of objecting to the jurisdiction of the court was made by motion to quash the service and dismiss the bill, or by demurrer for defects appearing on the face of the bill, or by plea in abatement for defects not appearing on the face of the bill. But under the new rules this procedure has been radically changed.

Equity rule 32 of the supreme court of the District of Columbia, following in substance rule 29 of the Supreme Court of the United States, provides: "Demurrers and pleas are abolished. Every defense in point of law arising upon the face of the bill shall be made by motion to dismiss. Every defense heretofore presentable by plea in bar or abatement shall be

made in the answer, and may be separately heard and disposed of before the trial of the principal case in the discretion of the court. If the defendant move to dismiss the bill, or any part thereof, the motion may be set down for hearing by either party upon five days' notice, and if it be denied, answer shall be filed within five days thereafter, or a decree *pro confesso* entered."

By the adoption of the equity rules a distinct advance was accomplished in equity procedure. The object sought to be attained was the simplification of the practice and to avoid unnecessary delay in bringing causes to issue. Since the abolition of pleas, there are but two defenses to a bill in equity: by motion to dismiss, which takes the place of a demurrer, and which, from every reasonable intendment, must be presumed to include all defects appearing on the face of the bill; and by answer, which, if the motion to dismiss is denied, must be filed within five days thereafter. By answer only can defects not apparent on the face of the bill be raised. Heretofore this could be accomplished by plea, which, under the rules, has likewise been abolished. The answer must be full, responding to the issue raised by the bill, challenging hidden defects therein affecting jurisdiction, and setting up any affirmative defense that may be available.

We think it logically follows that it was intended by the rule that every defense in point of law appearing upon the face of the bill must be incorporated in a single motion to dismiss. Otherwise, the court and plaintiff might be harassed and delayed by an almost endless series of motions,—for example, a separate motion to dismiss for lack of jurisdiction of the person; if denied, another for lack of jurisdiction of the *res;* if denied, another for want of equity; and, if denied, still another for defects in pleading. Instead of simplifying the practice, the condition would be even worse than existed before the adoption of the rules.

No good reason is apparent why this interpretation is not reasonable. Every question proper to be raised by motion to dismiss the bill can be advanced in a single motion and dis-

posed of at a single hearing. Of course, the court would first dispose of the question of jurisdiction of the person. If sustained, this would end the case. If denied, the other questions raised by the motion could then be disposed of, and the ruling on the entire motion be embraced in a single order.

We have been cited to no case where either rule 29 of the equity rules of the Supreme Court of the United States or the rule here in question has been considered. In *New Fiction Pub. Co.* v. *Star Co.* 220 Fed. 994, the defendant "moved under equity rule 29 to dismiss the bill of complaint, upon the ground that upon the face of the bill no cause of action against defendant is disclosed, and that the court is without jurisdiction to entertain the suit." Both the question of lack of jurisdiction of the person and of the subject-matter of the suit were involved; the court, without construing the rule, sustained the motion by holding that "as the suit cannot be maintained under the Copyright Act, and as diversity of citizenship is lacking, the motion to dismiss the bill is granted." We are of opinion, therefore, that under the rule a defendant may appear specially and, by motion to dismiss, challenge the jurisdiction of the court upon all the grounds apparent on the face of the bill, and not thereby waive his special appearance.

That a suit cannot be maintained in this District against Wells in his representative capacity is well settled. In *Bryan* v. *Curtis,* 30 App. D. C. 234, the court, considering the exact question here involved, said: "It is well settled in this country that an administrator or executor cannot sue or be sued in his representative capacity in any other jurisdiction than the one of his appointment, except where it is permitted by the laws of the jurisdiction in which the suit is sought to be maintained. *Vaughan* v. *Northup,* 15 Pet. 1, 10 L. ed. 639. * * * Section 329 of the Revised Code of the District of Columbia [31 Stat. at L. 1242, chap. 854] provides that an administrator or executor acting under letters of administration from a competent court of a foreign jurisdiction may bring suit in the District of Columbia by virtue of that authority alone. This right, however, of a foreign administrator or executor to

sue in the District does not imply, in the absence of statutory authority, that suit can be maintained in the courts of the District against such administrator or executor. It has been held, both by this court and the Supreme Court of the United States, in a number of instances, that an administrator or executor acting under such authority cannot be sued in the District of Columbia. This is in accord with the well-settled rule of law that executors and administrators are accountable only to the forum of administration."

The decree is affirmed, with costs.                    *Affirmed.*