# MARYLAND REPORTS.

## WILLIAM L. ROBERTS *vs.* EDWARD H. ROBERTS.

*Power of Sale by Executor—Suit in this State against Foreign*
*Executor in his Individual capacity—Power and Duties of*
*Executor—Sale by Executor without Authority—Power and*
*Duties of Executor in respect to the Proceeds of Unauthor-*
*ized sale—Jurisdiction.*

A testatrix in Maryland died leaving a farm in Pennsylvania, but owning no land in Maryland. By her will she devised as follows: "I desire my farm to be sold as soon as it can be sold to advantage after my death, that is, if it is not sold before. But no one shall force a sale to get their share without the majority is willing for it, and one-half of the price I want to be secured in the farm while my dear husband lives, or if it is taken out it must be secured in some other real estate, so as to keep the principal to be equally divided after my husband's death among all my children; my husband is to have the interest only while he lives. The other half I want to be equally divided among my children, or, if any of them is dead, their share is to be equally divided among their heirs. If any one owes us anything, take it out of their share before giving it to them, and divide it among them all." Her husband and her two sons C. and W. were named as executors. The husband died after the date of the will, and during the life of the testatrix, and letters testamentary were granted to W. one of the executors, both in Maryland and Pennsylvania. The farm in Pennsylvania was sold by W. the acting executor, without the authority of the Orphans' Court in Pennsylvania, which by the law of that State was essential to the validity of the sale. But although the sale was made by him, the deed given to the purchaser was executed by the

1                   v. 71.

adult children of the testatrix and the guardian of an infant grandchild; and the purchase money was collected by him, and he charged himself with it in an account stated by him in the Orphans' Court in Pennsylvania, and confirmed by that Court. HELD:

1st.   That the acting executor by selling in the unauthorized manner above stated, and delivering said deed, did not deprive himself of other powers over the proceeds of sale when those proceeds came into his hands. .

2nd.   That the division of the proceeds of sale, the deduction of the debts due by the children from their respective shares, and the payment of the debts of the testatrix which her personal estate was insufficient to pay, were duties which devolved upon him though not expressly conferred by the will; and the funds were subject to the trusts impressed upon them, no matter how the sale was made.

3rd.   That if there were errors in the account stated by him in the Orphans' Court in Pennsylvania, they could not be corrected by any proceeding in this State.

4th.   That while the fund was under the jurisdiction of the Orphans' Court in Pennsylvania, it could not be interfered with by any process here.

5th.   That the executor was not liable in his individual capacity, and could not be sued in that capacity in this State by one of the distributees of the fund, for the distributee's share of the fund held by him as executor.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, BRYAN, and McSHERRY, J.

*Thomas H. Robinson,* and *Robert R. Boarman,* for the appellant.

*William H. Harlan,* and *George L. Van Bibber,* for the appellee.

Roberts *vs.* Roberts.

McSHERRY, J., delivered the opinion of the Court.

On the 28th of July, 1881, Jane P. Roberts executed her last will and testament in due form of law. After making bequests of specific articles of small value to her children, she devised as follows: "I desire my farm to be sold as soon as it can be sold to advantage after my death, that is if it is not sold before. But no one shall force a sale to get their share without the majority is willing for it, and one-half of the price I want to be secured in the farm while my dear husband lives, or if it is taken out, it must be secured in some other real estate so as to keep the principal, to be equally divided after my husband's death among all my children; my husband is to have the interest only while he lives. The other half I want to be equally divided among my children, or if any of them is dead, their share is to be equally divided among their heirs. If any one owes us anything, take it out of their share before giving it to them, and divide it among them all.     *     *     And lastly, I hereby nominate and appoint my dear husband, William H. Roberts, and my two sons, Charles W. Roberts and William L. Roberts, the executors of this, my last will and testament." Her husband died after the date of this will and during the life of the testatrix. At the time of her decease Mrs. Roberts owned some personal property situated in Harford County, and a farm located in Montgomery County, Pennsylvania. This is the farm mentioned in her will and the only real estate she possessed. Her will was admitted to probate in Harford County, Maryland, and also in Montgomery County, Pennsylvania, and letters testamentary were duly granted in both States to William L. Roberts, one of the executors. The farm was sold by William L. Roberts who received the purchase money, but the deed to the purchaser was signed and executed by the adult children of Mrs. Roberts and by the guardian of the

infant grandchild. Something over two years afterwards Edward H. Roberts, one of the sons of the testatrix, sued out of the Circuit Court for Baltimore County, a foreign attachment against his brother, William L. Roberts, for the recovery of his, Edward's, share of the proceeds of that sale. William appeared and contested the claim made against him. The judgment being in favor of Edward, William has brought the case here for review.

We need make no other allusion to the pleadings than to state that the whole controversy was narrowed down to two leading questions, viz., first, whether William L. Roberts had authority to sell the Pennsylvania land as executor of Jane P. Roberts; and secondly, whether the claim of set-off made and relied on by the appellant can be sustained. There are three exceptions in the record. The second and third present these two questions, whilst the third relating to the admissibility of evidence is of little or no consequence.

It will be observed that Mrs. Roberts' will does not in terms confer upon her executors power to make sale of the Montgomery County farm. She expressed a desire that the farm be sold as soon as a sale could be advantageously made; but as far as she was able she prohibited an enforced sale by any one of her children unless made with the concurrrence of a majority of them. In the absence of authority either express or implied, given to the executors by the will, they had no power to make sale of the land, as executors, unless the laws of the commonwealth of Pennsylvania permitted them to do so. The provisions of those laws to which we have been referred, are to be found in *Brightly's Purdon's Digest.* It is there provided "All powers, authorities and directions relating to real estate, contained in any last will, and not given to any person by name or by description, shall be deemed to have been given to the executors

thereof; but no such power, authority or direction shall be exercised or carried into effect by them, except under the control and direction of the Orphans' Court having jurisdiction of their accounts." *Brightly's Purdon's Dig.,* (10*th Edition*,) 418, *sec.* 70. From this it is quite clear that the executors named in Mrs. Robert's will, though not specially empowered by the terms of that instrument, were clothed with full authority by the statute to sell the land in question. By *sec.* 72 this authority devolved upon the surviving or acting executor. But whilst this is so, it is expressly provided in *sec.* 70, just quoted, that this power or authority to make sale of the real estate of a decedent under this statute, shall not be "exercised or carried into effect" by the executor "except under the control and direction of the Orphans' Court having jurisdiction of" the executor's accounts. The Supreme Court of Pennsylvania has had occasion to construe this statute, and it has held that the executor, under such circumstances as are presented in this case, could only make a valid sale of the land by applying to the Orphans' Court and obtaining its order and direction, or possibly by reporting the sale to the Court and obtaining an order confirming it on due notice to all parties in interest. *Bell's Appeal,* 66 *Pa. St.,* 498; *Kirk vs. Carr,* 54 *Pa. St.,* 285.

It is not pretended that the appellant obtained from the Orphans' Court of Montgomery County, any order or direction whatever either authorizing or confirming the sale. On the contrary he sold the land without any such order and caused all the adult children of Mrs. Roberts and the guardian of the infant grandchild to unite with him in the deed to the purchaser. It thus abundantly appears that whilst he had the *power* to make the sale, he did not exercise or profess to exercise that power; and had he attempted, without complying with the statute, to convey the property, the purchaser

would have acquired no title under a deed from him. This case, however, does not involve the title of the purchaser or the validity of the sale. Under the statute the *power* to make the sale was in the executor, though he had not complied with the conditions upon which the *exercise* of that power depended. Having, however, in fact negotiated the sale, and having secured a good title to the purchaser, as just stated, he collected the purchase money, and charged himself with the whole amount thereof in an account stated on the 3rd· of September, 1887, in the Orphans' Court of Montgomery County, which account was, there being no exceptions filed to it, absolutely confirmed by that Court on October 13th, 1887. His failure to procure an order authorizing him to execute his power of sale did not extinguish the power, but suspended his right to exercise or carry it into effect.

But the power of sale was not the only power he possessed, under the will and the Pennsylvania statute, with respect to the property and the proceeds arising from its sale; and it by no means follows, because he omitted to exercise or carry into effect this particular power, that he thereby surrendered all control over the proceeds of sale, or abandoned the other duties devolved upon him with regard to the investment, disposition, and distribution of those proceeds. If, instead of selling under and in conformity with the power conferred by the statute, and giving such a deed as he would then have had authority to give, he sold in the manner stated by the appellee, and delivered the deed we have mentioned, he clearly did not thereby deprive himself of other powers over the proceeds of sale when those proceeds actually came into his hands. His duties, with regard to them, were distinct and apart from the mere power to make sale; and the performance of these duties could not be made to depend upon the manner in which the sale happened to be effected.

Roberts *vs.* Roberts.

The clause quoted from the will gave directions that one-half of the proceeds of sale should be secured in the farm whilst the testatrix's husband lived; "or if it be taken out it must be secured in some other real estate," &c. After the husband's death an equal division of it was directed to be made. The other half was also to be divided, but the debts due by the children were directed to be deducted from their respective shares. There were obligations due by the testatrix, and payable out of these proceeds, because the personal estate was insufficient. Manifestly, all these duties devolved upon the executor, though not expressly conferred by the will. It was he, who, had the husband survived, would have made the investment. It is he who must make, in the mode pointed out in the Pennsylvania statute, the division, and deduct the sums due by the children. It is he, who must pay the debts of the testatrix and the proper expenses of administration. These are all directions contained in the will, or imposed by law. The funds were subject to the trusts impressed upon them, no matter how the sale was made. The executor could not disengage them from those trusts by neglecting to exercise his power of sale, or by substituting some other mode of giving to the purchaser a valid title to the land.

The account which he stated in the Orphans' Court of Montgomery County, charged him with the whole of these funds, and gave him credit for debts and expenses paid, and allowed him commissions, leaving a balance in his hands to be distributed under the will. If there are errors in that account they cannot be corrected by any proceeding in this State. Whenever the executor shall make distribution of that balance, showing the amount due to the appellee, the latter will be in a position to demand the same, or to institute appropriate proceedings for correcting any error made in the distribution. But, whilst the subject-matter is within and under the

jurisdiction of the Orphans' Court of Montgomery County, as it undoubtedly still is, it cannot be interfered with by any process here. This suit, if successful, would actually reverse, at least partially, what has been done without objection, by that tribunal.

Reduced to its final analysis, the case stands thus: The executor had the clear power to make the sale; he failed to exercise or carry that power into effect. A sale was nevertheless made in some other way, and the purchase money was paid into his hands. He then did with that purchase money precisely the thing he would have been required to do with it had he executed, in the most formal manner, the power of sale; and the Orphans' Court of Montgomery County assumed jurisdiction over it, exactly as it would have done, had that Court passed an order directing a sale. The matter is still pending in that Court. Notwithstanding all this, the Courts of this State are now asked to set aside what a tribunal having jurisdiction of the executor's accounts has deliberately done, and to hold the executor personally liable for one-seventh of the purchase money received by him; and the sole ground upon which the application is based is, that the appellant was not ''legally authorized in his capacity of executor of Jane P. Roberts, to sell the land in Montgomery County.'' By the first instruction, granted at the instance of the appellee, the jury were, in effect, so directed. There was error in this. The fourth prayer presented by the appellant ought to have been granted. It denied a recovery because the appellant was not liable in his individual capacity, and in that capacity he has been sued.

It necessarily follows from the views we have expressed that the judgment must be reversed without awarding a new trial, and we are therefore not required to pass upon the other questions raised by the exceptions. *Code, Art. 5, sec.* 19.

Inasmuch as the record has been unnecessarily incumbered by the repetition of the same matter, the appellant will be required to pay so much of the costs, to be taxed by the clerk of this Court, as have been occasioned by the printing of Jane P. Roberts' will more than once.

*Judgment reversed.*

(Decided 9th May, 1889.)