## Appleton Estate

*Garrett A. Brownback* and *Robert L. Trescher*, for petitioner.

*High, Swartz, Flynn & Roberts*, for respondent.

HOLLAND, P. J., May 22, 1951.—On December 19, 1950, Mary A. MacFarland, a pecuniary legatee under the will of the above-named testatrix, filed a petition in the office of the register of wills for a citation on Henry Lewis Appleton as executor, next of kin, and residuary legatee, to show cause why he should not appear before the register and qualify as executor in ancillary administration or as ancillary administrator c. t. a. or, failing this, why ancillary letters of administration should not be granted petitioner.

The citation was duly served on him and on January 3, 1951, he filed an answer in the office of the register in which he raised preliminary objection to the jurisdiction of the register. There being a difficult and disputable question involved, the register certified the proceeding to this court as provided by section 19 of the Register of Wills Act of June 7, 1917, P. L. 415.

Testatrix died June 16, 1950, a resident of Ventnor City, Atlantic County, State of New Jersey. In her will probated in Atlantic County she bequeathed two legacies to petitioner aggregating $10,000, a legacy to a cousin of $1,500, and the residue to respondent. Petitioner, Mary A. MacFarland, is the only child of respondent, Henry Lewis Appleton. The latter is the only child of testatrix. Petitioner has three children.

The petition, which for the purposes of this decision must be taken to be true, sets out the chronology of events. Testatrix made her will on July 19, 1945. On October 13, 1947, she gave her son, respondent, an unlimited power of attorney. She died June 16, 1950. It is further alleged that, taking advantage of the power of attorney, he misappropriated $6,700 of testatrix's property by paying himself an alleged obligation from decedent to him which was 15 years old, waived and barred by the statute of limitations; that he fraudulently conveyed 7 South Dorset Avenue, Vent-

nor, to his present wife; that he occupied the same property without paying rent; that he unlawfully converted to his own use securities, cash, and other property.

The contention of petitioner is that, from all of these unlawful acts to the detriment of the estate, a personal liability arises on his part to the estate for restitution, and he, residing at 216 Wyncote Road, Jenkintown, Montgomery County, Pa., this obligation to the estate constitutes property of the estate in Montgomery County concerning which ancillary administration is appropriate.

Respondent contends in his answer that the complaint of petitioner would involve title to the Dorset Avenue real estate at Ventnor which could only be under the jurisdiction of the proper court of New Jersey; that if respondent owes the estate any obligation, he being the executor and qualified as such in the domicillary jurisdiction, such possible obligation is a question of surcharge of him as an accountant and can only be decided by the New Jersey court to which he is answerable in his accounts.

Which is the correct conclusion of law? Certain it is that if the conveyance of the Ventnor real estate were attacked with the objective of having it set aside such a proceeding could only be brought in the jurisdiction of the situs of the real estate. On the other hand the proceeding might be founded on a personal claim against respondent in the way of damages or surcharge for selling it for an inadequate consideration.

It is enlightening and a guide to the general principle of law to project the course that would be pursued, were the prayer of petitioner granted, because, the law being the perfection of reason, that which turns out to be reasonable is likely to be the law and that which

turns out to be unreasonable is likely not to be the law. Were this court to direct respondent to take out ancillary letters and he did, then petitioner would have to petition this court for a citation on him to sue himself or file an account that she might file exceptions and seek a surcharge against him. If he declined to take out ancillary letters and she, as an alternative, took out ancillary letters, which would be a more favorable situation for her, she might sue him and if successful collect a substantial amount for the estate. This would be the most favorable situation she could hope for. But even so, this would only be the beginning of her troubles. Her first duty would be to assure herself that there were no Pennsylvania creditors because these would be the only persons entitled to distributions direct from the ancillary administration. Any balance not distributed to Pennsylvania creditors, and thus far it does not appear to be any, would be awarded to the personal representative in the domiciliary jurisdiction. She could not be paid her legacies out of the fund before such transfer nor could any other beneficiary under the will be so paid, because the court of the domiciliary jurisdiction has the exclusive jurisdiction to interpret the will and determine those entitled to distribution both as to the identity of the beneficiaries and the quantum of their benefits.

Since the personal representative in the domiciliary jurisdiction is the same executor and respondent as in this proceeding and, since the chances are that he will continue to be just as recalcitrant and evasive as the presently known facts would indicate, petitioner would be just where she started. Presumably he would resist filing an account and throw every possible impediment in petitioner's way to delay bringing the matter to an issue that she might have her rights judicially determined. This being the case, she might as well start

in the domiciliary jurisdiction in the first place, secure the filing of an account and, if respondent, as executor, fails to charge himself with this alleged property in the account, seek a surcharge. As above predicted this is the reasonable course and this is the law: See Estate of Jacob M. Weaver, 114 Pa. Superior Ct. 439 (1934).

In view of the admitted facts in this case any court would be inclined toward a procedure which is best for petitioner. Certainly she is entitled to have her rights adjudicated in some court, and what we above find to be the proper procedure seems the best for her. This petition will be dismissed, therefore, leaving her to resort to the domiciliary jurisdiction. It would be well, however, for counsel for respondent to advise his client not to take too much comfort from the outcome of this proceeding. There is authority and precedent in this Commonwealth that where an unfaithful fiduciary seeks asylum within its limits to evade process of the foreign court to which he is answerable, the court of proper jurisdiction within this Commonwealth will employ its process to force him to perform his fiduciary duties and take jurisdiction of litigation in connection therewith. This decedent died June 16, 1950, almost a year ago. There seems to be little excuse for the executor not to have filed his account voluntarily so that petitioner could have her day in court. If with this warning he does not forthwith file his account in the domiciliary jurisdiction with notice to this petitioner or take such other appropriate legal action according to the laws of New Jersey as will secure to petitioner the judicial inquiry to which she is entitled, a different action may be taken by this court if the matter comes before it judicially.

And now, May 22, 1951, the petition is dismissed; costs to be paid by petitioner.