STATE OF MAINE

Sagadahoc, ss.



SUPERIOR COURT

AMH SAG - 4/3/2012

JUDY A. S. METCALF

Petitioner

v.

Docket No. BATSC-AP-11-003

STATE TAX ASSESSOR

Respondent

## DECISION AND JUDGMENT

Petitioner Judy A. S. Metcalf brings this appeal pursuant to M.R. Civ. P. 80C and 36 M.R.S. § 151,[1] seeking *de novo* review of the Respondent State Tax Assessor's decision on reconsideration upholding a Maine estate tax assessment made against her, in her capacity as administratrix of a Massachusetts probate estate, in the amount of $98,180.31.

The parties have waived evidentiary hearing and have agreed to *de novo* judicial review based on a stipulated record, reflected in the Stipulation of Facts filed by the parties and the exhibits thereto.

The Respondent asserts that the Petitioner as administratrix is personally liable for Maine estate tax due from the estate because she had sufficient estate assets under her control to pay the tax, and the tax has not been paid. The Petitioner contends she is not personally liable as administratrix because the Maine real estate that triggered the tax liability had already passed out of the estate by the time she became administratrix. Based on the stipulated facts,

---

[1] The State Tax Assessor's decision on reconsideration constitutes final agency action subject to review by the Superior Court in accordance with the Maine Administrative Procedures Act except for sections 11006 and 11007. 36 M.R.S. § 151 (2011). Therefore, the Superior Court's review is not confined to the record before the agency (because there is no record) and is not limited in the scope of review.

1

judgment is granted to Petitioner, but for a different reason than she argues. The court

concludes that the Respondent Assessor and this court lack jurisdiction to adjudicate the

personal liability of a foreign personal representative such as Petitioner.

In summary, the court's reasoning is as follows:

- Under Maine law, Petitioner is a "domiciliary foreign personal representative," i.e., a personal representative of an estate administered in another jurisdiction who has filed her appointment papers in a Maine probate court in order to be empowered to act in Maine with respect to estate property.

- Generally the personal liability of a personal representative for obligations of an estate is determined under the law of and in the courts of the jurisdiction in which the personal representative was appointed. The Maine Probate Code honors this principle by excluding foreign personal representatives (including domiciliary foreign personal representatives) from the Code provisions that regulate the status, duties and liabilities of personal representatives. Likewise, the Maine estate tax statutes on which the Respondent Assessor relies in this case exclude foreign personal representatives such as Petitioner from the definition of "personal representative."

- If Maine law governs the conduct of Petitioner, it is only by virtue of her qualifying as a "domiciliary foreign personal representative" in order to sell a small parcel of real estate, not the real estate that generated the tax assessment at issue.

- The Massachusetts court that appointed Petitioner has authority to regulate her duties and liabilities under Massachusetts law. That court also has the authority to control the application of estate assets to estate obligations, and to supervise Petitioner's disposition of estate assets, under Massachusetts law.

- Because Massachusetts law governs, and the Massachusetts court has authority over the Petitioner in her capacity as administratrix, the Respondent's determination that the Petitioner should have paid Maine estate tax before making other payments and is personally liable for not doing so reflects an assertion of control over the application of estate assets and over the liability of the personal representative that is beyond the Respondent's statutory authority.

Based on this reasoning, the Notice of Assessment issued to Petitioner in her capacity as

administratrix is invalid, because it is based on an adjudication of personal liability of a foreign

personal representative that lies beyond the Respondent Assessor's (and this court's)

jurisdiction. The Notice of Assessment was "[i]n excess of the statutory authority of the

2

agency" for purposes of 5 M.R.S. § 11007(4)(C)(2). Petitioner's appeal is sustained; the assessment against her is vacated, and she is granted judgment.

## Factual Background

This case arises from the estate of Alfred F. Anderson, a Massachusetts resident who died on January 11, 2004. (Stip. Facts ¶ 1.) At the time of his death, Mr. Anderson owned three parcels of real property on Linekin Road, Boothbay Harbor, Maine. (Stip. Facts ¶ 2.) These lots were a house and lot at 51 Linekin Road, a 1.8 acre ocean-front parcel, and a 24.2 acre parcel, referred to as the Back Parcel. (Stip. Facts ¶ 2.) The Massachusetts Probate and Family Court appointed Martin Kenneth Gerstmar ("Gerstmar") executor of Mr. Anderson's estate on January 24, 2004, in accordance with Mr. Anderson's will. (Stip. Facts ¶ 3.)

On September 7, 2004, Gerstmar, as executor, sold the Back Parcel to Steven C. Jordan, Trustee of the Linekin Bay Trust, a Massachusetts trust of which Gerstmar's own son was also a trustee, for $170,000, with net proceeds in the amount of $168,859.50. (Stip. Facts ¶ 4.) Gerstmar filed a federal estate tax return, valuing the parcel at $170,000 and paid federal estate taxes of $635,574, based in part on this valuation. (Stip. Facts ¶ 5.) Gerstmar also filed a Maine estate tax return, paying Maine estate taxes in the amount of $85,198, based in part on the valuation of the Back Lot. (Stip. Facts ¶ 6.)

In 2005, the residuary beneficiaries of the estate (Hugh E. Murray, Roberta Murray, and Sean P. Murray) retained the Petitioner to pursue their claim that Gerstmar had improperly sold the Back Parcel to a trust in which his son had an interest, for an amount significantly below the market value. (Stip. Facts ¶ 10.) An October 2005 appraisal of the Back Parcel estimated the market value of the lot on the date of Mr. Anderson's death to be $355,000, more than twice the price at which Gerstmar had sold it to his son's trust. (Stip. Facts ¶ 11.) On October 17, 2005, the residuary beneficiaries petitioned the Massachusetts Probate and Family

3

Court to remove Gerstmar as executor because of the sale to a related party. (Stip. Facts. ¶ 12.) The residuary beneficiaries also brought suit in Lincoln County Superior Court against Gerstmar and against the trustees of the Linekin Bay Trust both individually and in their capacity as trustees, over the sale of the Back Parcel. (Stip. Facts ¶ 13.) Petitioner Metcalf was in contact with the Internal Revenue Service regarding these pending actions. (Stip. Facts ¶¶ 14-16.)

In settlement, Gerstmar agreed to resign as administrator of Mr. Anderson's estate and agreed to place $30,000 in escrow for the purpose of paying interest and penalties levied by federal and state taxing authorities based on the difference in valuation of the Back Parcel and the residual beneficiaries agreed to pay Gerstmar a fee of $15,000. (Stip. Facts ¶ 17.) The trustee defendants agreed to transfer three parcels, one to each of the beneficiaries. (Stip. Facts ¶ 17.) The parties also settled the Massachusetts action. (Stip. Facts ¶ 18.)

On January 17, 2007, the Massachusetts Probate and Family Court appointed Petitioner Metcalf as administratrix of the Anderson estate. At that time, the balance in the estate's account was $1,021,314.75. (Stip. Facts ¶¶ 19-20.) Upon her appointment, Ms. Metcalf made the following distributions of the estate:

- January 31, 2007: $15,000 to Gerstmar and $50,000 to the residuary beneficiaries. (Stip. Facts ¶ 21.)
- January 2007 – January 2008: $43,150.88 to Eaton Peabody for legal fees. (Stip. Facts ¶ 22.)
- February 9, 2007: $42,270 to Roberta Murray for reimbursement of legal fees. (Stip. Facts ¶ 23.)
- February 16, 2007: $309,086 to Inheritance Funding Co. for the benefit of the residuary beneficiaries. (Stip. Facts ¶ 24.)

On February 27, 2007, Ms. Metcalf received notice from the IRS proposing to increase the value of the Back Parcel. Shortly thereafter, on March 15, 2007, she learned of a small additional parcel of Maine real estate owned by Mr. Anderson. (Stip. Facts ¶ 26.) That parcel

4

was sold later, in 2011. Petitioner filed her Massachusetts appointment papers in the Lincoln County Probate Court in April 2011 to enable the estate through her as administratrix to sell the property. She did so and the entire sale proceeds of $15,465.90 were remitted to the State of Maine for estate taxes. (Stip. Facts ¶ 26.)

On August 17, 2007, the estate received a Notice of Deficiency from the IRS that asserted the Back Parcel was valued at $1,359,488 and that additional tax of $639,279 and additional tax for civil fraud of $519,959 was owed. (Stip. Facts ¶ 27.) In May 2008, the estate settled with the IRS on this deficiency claim and paid $591,168.12 ($343,404.28 in tax deficiency, $116,868.89 in civil penalties, and $133,894 in interest) based on a valuation of the Back Parcel of $950,000. (Stip. Facts ¶¶ 28-30.) The IRS agreed to pursue Gerstmar for any fraud penalty over the total amount paid by the estate. (Stip. Facts ¶ 29.)

After settling with the IRS, Metcalf filed an amended Maine estate tax return to reflect the Back Parcel lot value of $950,000. (Stip. Facts ¶ 31.) The amended return reported that $63,005 in additional tax was due. (Stip. Facts ¶ 31.) That additional tax was not remitted along with the amended return. (Stip. Facts ¶ 31.) A Notice of Deficiency was issued on February 5, 2009 (Stip. Facts ¶ 32) and a Notice of Assessment was issued to Petitioner Metcalf as administratrix on July 9, 2010 (Stip. Facts ¶ 33). Petitioner Metcalf requested reconsideration on August 10, 2010. (Stip. Facts ¶ 34.) After reconsideration, the Assessor upheld the assessment against Ms. Metcalf in the amount of $98,180.31. (Stip. Facts ¶ 35.)

Ms. Metcalf filed for review of the final agency action in this court on February 18, 2011. (Stip. Facts. ¶ 38.) The assessment has not been paid by Petitioner Metcalf. (Stip. Facts ¶ 37.)

In April 2011, Petitioner Metcalf filed her Massachusetts appointment papers with the Maine Probate Court, Lincoln County, pursuant to the Maine Probate Code, to enable her to

5

act as a domiciliary foreign personal representative and carry out the sale of the small parcel. The Anderson estate has not been administered in any Maine court, nor has Petitioner ever been appointed personal representative of the Anderson estate by any Maine court.

## Procedural Background

After the petition was filed, the Petitioner filed a motion for leave to file an Amended Petition. That motion was granted by Order dated July 26, 2011. Thereafter, the Petitioner filed a motion for summary judgment that the Respondent opposed, mainly on the basis that the Respondent needed to take discovery regarding transactions in the underlying estate. The summary judgment motion eventually was superseded by a motion to specify the future course of proceedings, in which the parties proposed to present their positions based on a stipulated record. That motion was granted in an order dated October 17, 2011.

As agreed, the parties filed a Stipulation of Facts executed by counsel for both parties, with exhibits. The parties filed simultaneous briefs and reply briefs, and oral argument was held January 3, 2012. The parties' initial briefs focused on the significance, or not, of the fact that the Back Parcel had already been sold by the time Petitioner became administratrix.

After oral argument, the court issued a further order dated January 25, 2012 requesting additional briefing by the parties. The reason for the request was that the court came to question the premise that the Maine law could impose personal liability for unpaid estate tax on a domiciliary foreign personal representative. The parties submitted additional briefs and on March 2, 2012, the matter became ready for decision.

## Analysis

### A. The Maine Estate Tax Framework

Maine law imposes an estate tax on the transfer of real or personal property situated in Maine and held by a person who was not a Maine resident at the time of death. 36 M.R.S. §

4064 (2011).  Maine's estate tax statutes impose liability on personal representatives to pay estate taxes:

- "The tax imposed by this chapter shall be paid by the personal representative to the extent of assets subject to his control." 36 M.R.S. § 4065 (2011).

- "Personal representatives…are liable for the taxes imposed by this chapter with interest, as provided, until the taxes are paid." 36 M.R.S. § 4078 (2011).

Petitioner's argument is that the Maine tax statutes cannot be construed, at least in a constitutional manner, to impose personal liability upon her for taxes due on a Maine asset that had passed out of the estate before her appointment as personal representative.  (Pet's Br. 5-7.) The Supreme Court has held that the due process clause of the Fourteenth Amendment prohibits states from imposing estate taxes, directly or indirectly, on any tangible real or personal property situated outside of the state's jurisdiction.  *Treichler v. Wisconsin*, 338 U.S. 251, 256 (1949).

Petitioner argues that the constitutional limitation requires the statute to be interpreted to read: "The [Estate] tax imposed by this chapter shall be paid by the personal representative to the extent of [Maine] assets subject to his control." (Pet. Br. 7.)  Unless so interpreted, the Petitioner asserts, the statute is unconstitutional as applied to her, given that she never had control of any Maine assets other than the small parcel of Maine real estate on which taxes have been paid.  If the statute is interpreted as the Petitioner proposes, the fact that she did not have any Maine assets under her control at any time (except for the just-mentioned small parcel) absolves her of any personal liability.

The Respondent notes that nothing in section 4065 limits the definition of "assets subject to [the personal representative's] control" to Maine assets in the manner argued by Petitioner. (Resp. Br. 10-11.)  *See Blue Yonder, LLC v. State Tax Assessor*, 2001 ME 49, ¶ 10, 17

7

A.3d 667, *citing Stromberg-Carlson Corp. v. State Tax Assessor*, 2001 ME 11, ¶ 9, 765 A.2d 566 ("the plain meaning of the statute controls" interpretation of unambiguous statute).

The Respondent also challenges the Petitioner's premise that the Back Parcel was no longer under her control because it had been sold before she became administratrix. The Respondent argues that the asset was simply converted from real property to a cash asset under the control of the estate. At the time that Metcalf became administratrix, the estate contained $1,021,314.75 over which she had control and could have paid any expected future deficiency. (Resp. Br. 14-15.) Although Petitioner argues that none of that fund was in Maine accounts, the Respondent says this is irrelevant—the funds were still "assets subject to [the Petitioner's] control" for purposes of section 4065, and they should have been applied to the Maine estate tax. Respondent argues that Petitioner's interpretation would give personal representatives an easy means of avoiding personal liability for failing to pay taxes due.

Furthermore, the Respondent points out, the Probate Court may not allow a final account of the personal representative until the State Tax Assessor has certified that the "amount of tax has been paid, that payment has been secured…or that no tax is due," 36 M.R.S. § 4065(2), and the personal representative is not discharged from personal liability until after a final determination of federal estate tax liability and any amounts due under Maine estate tax, 36 M.R.S. § 4066.

According to the Respondent, the relevant provisions of the estate tax scheme can only be logically interpreted as imposing upon a personal representative the duty to pay taxes due on a Maine asset, to the extent of assets under the personal representative's control, wherever those assets may be. (Resp. Br. 13.) In other words, the personal representative's duty to pay Maine estate tax due is not extinguished simply because the asset subject to taxation is no longer in the estate.

8

The court agrees with the Respondent's interpretation of the statutes in question, but only as they relate to a personal representative appointed by a Maine probate court for an estate administered in Maine. Were Petitioner a personal representative appointed, qualified and acting in Maine, the fact that the Back Parcel was never in her control would not preclude personal liability. Likely, the issue would be whether the personal representative had control of sufficient estate assets, regardless of their location, to pay the tax and whether the personal representative was at fault in failing to pay. *See* 18-A M.R.S. § 3-808 (individual liability of personal representative); 36 M.R.S. §§ 4065, 4078.[2] The question becomes whether the same is true of a foreign personal representative such as Petitioner.

## B. The Jurisdictional Issue

As the foregoing summary suggests, the parties' initial briefs focused on the significance of the fact that the Back Parcel had passed out of the estate before Petitioner became administratrix. The unstated premise evidently shared by both parties is that the State Tax Assessor has authority to adjudicate a foreign personal representative's personal liability.

However, some of the authority relied upon by the Respondent Assessor obviously does not even apply. For example, when the Petitioner may render a final accounting in the

---

[2] Whether the Respondent Assessor itself can adjudicate personal liability even as to a personal representative appointed and acting in Maine is an interesting question. The Maine estate tax statutes on which the Respondent relies impose personal liability on personal representatives, but are silent on what court or agency is entitled to adjudicate personal liability. The Maine Probate Code suggests that such an adjudication is made by the Maine probate court (or possibly this court in cases of concurrent jurisdiction) in the context of a creditor's proceeding against the estate, in which the creditor seeks to impose personal liability on the personal representative. For example, section 3-807(b)(2) of the Maine Probate Code appears to address the precise situation here—in which a personal representative's prior payments to beneficiaries have deprived the Respondent's estate tax claim of priority. Section 3-807 and the remainder of Article III of the Maine Probate Code do not apply in this case because their application to non-resident decedent estates is limited to estates administered in Maine. *See* 18-A M.R.S. § 4-207 (Article III provisions apply to estates of nonresident decedents when the estate is administered locally in Maine). Thus, the question of the Assessor's authority as to estates probated under Maine law need not be answered here.

9

Massachusetts Probate and Family Court is governed by Massachusetts law, not by the Maine State Tax Assessor's certification pursuant to section 4065(2).

As this court noted in its order regarding further briefing, "[t]he fact that the real estate that triggered the tax liability at issue had passed out of the estate before the Petitioner was appointed is not dispositive in this court's view." What is dispositive is whether the Maine State Tax Assessor has authority to adjudicate administratively the personal liability of a foreign personal representative such as Petitioner.

The Maine Administrative Procedure Act, read in connection with the tax appeal statute, calls for this court to conduct *de novo* review of the Assessor's decision on reconsideration to uphold the Notice of Assessment. *See* 5 M.R.S. § 11007; 36 M.R.S. § 151. Although review is *de novo* and not limited to the administrative record, the court still has to consider whether the Assessor's decision is "[i]n excess of the statutory authority of the agency." 5 M.R.S. § 11007(4)(C)(2). The question is may the Assessor adjudicate the personal liability of a foreign personal representative?[3]

C. Petitioner Is a Domiciliary Foreign Personal Representative Whose Personal Liability Is Not Regulated by the Maine Probate Code or the Maine Estate Tax Statutes

Massachusetts and Maine both have enacted statutes defining when a personal representative (called an administrator under the Massachusetts law in effect when Petitioner was appointed[4]) can be held personally liable for obligations of the estate. The Massachusetts

---

[3] Personal jurisdiction is not an issue, based on Petitioner having filed her administratrix appointment papers in the Lincoln County, Maine probate court. *See* 18-A M.R.S. § 4-301 (bases for personal jurisdiction over foreign personal representative). The fact that Petitioner happens to be a Maine resident is irrelevant and does not affect jurisdiction over her as administratrix. But the Petitioner's amenability as administratrix to personal jurisdiction in Maine means only that the estate can be sued through her. It does not mean that any jurisdiction in which there is an asset or obligation of the estate has authority to adjudicate her personal liability.

[4] Massachusetts has enacted a version of the Uniform Probate Code that will be fully effective in 2012. Massachusetts Uniform Probate Code, Mass. Acts of 2008, ch. 521. The new Massachusetts code

10

statute in effect until recently provided: "An executor or administrator shall be individually liable for obligations arising from ownership or control of the estate or for torts committed in the course of administration of the estate only if he was personally at fault." Mass. Gen L. ch. 195, § 17 (repealed eff. 2012). The Maine Probate Code contains a similar provision: "A personal representative is individually liable for obligations arising from ownership or control of the estate or for torts committed in the course of administration of the estate only if he is personally at fault." 18-A M.R.S § 3-808(b).

Respondent asserts correctly that the issue of fault is irrelevant in this case because the Petitioner is not arguing lack of fault on her own part in this case.[5] The point, however, is that Massachusetts law and the Maine Probate Code each have provisions defining the standards under which personal representatives appointed in the courts of each state can be found personally liable for obligations of the estate.

Because a court in another jurisdiction appointed Petitioner administratrix of the Anderson estate, she is a "foreign personal representative" for purposes of Maine law. *See* 18-A M.R.S. § 1-201(14) ("Foreign personal representative means a personal representative of another jurisdiction"). Maine's tax and probate statutes implicitly recognize the limited extent to which Maine law can dictate the powers and liabilities of a foreign personal representative. The Maine Probate Code dedicates a separate article, Article IV, to foreign personal representatives, but that article imposes only limited duties and obligations focusing on estate property and transactions in Maine, and does not address personal liability at all. *See* 18-A M.R.S. art. 4, §§ 4-101 through 4-401.

---

replaces the term "administrator" with the term "personal representative." *See* Mass. Gen. L. ch. 190B, § 1-201(37) (definition of "personal representative").

[5] In her reconsideration request dated August 10, 2010, Petitioner indicated that she did not contest the assessment against her based on lack of fault on her part, and she has not raised lack of fault as a defense in this appeal.

11

In contrast, Article III of the Probate Code governs the status, powers, duties and liabilities of personal representatives generally, and specifically addresses the issue of personal liability. *See* 18-A M.R.S. § 3-808 (individual liability of personal representatives). Article IV, which covers foreign personal representatives, provides for Article III to apply to estates of nonresident decedents only to the extent the estate is being administered under the auspices of a Maine Probate Court by a "local personal representative":

> In respect to a nonresident decedent, the provisions of Article III of this Code govern (1) proceedings, if any, in a court of this State for probate of the will, appointment, removal, supervision, and discharge of the local personal representative, and any other order concerning the estate; and (2) the status, powers, duties and *liabilities* of any local personal representative and the rights of claimants, purchasers, distributees and others in regard to a local administration.

18-A M.R.S. § 4-207 (emphasis added).

Thus, the Maine Probate Code governs the "liabilities" of personal representatives of non-resident decedent estates, but only if the personal representative has been appointed a "local personal representative" for purposes of "local" administration. Petitioner has never been a "local personal representative" of the Anderson estate, and there has never been local administration of that estate in Maine.

To enable her to dispose of the small parcel in 2011, Petitioner became a "domiciliary foreign personal representative" in April of that year by virtue of filing copies of her appointment by the Massachusetts court in the Lincoln County Probate Court. *See* 18-A M.R.S. §§ 4-204 (procedure for qualifying as domiciliary foreign personal representative); 4-205 (powers of domiciliary foreign personal representative). The Maine Probate Code does not purport to define or regulate the liability of a domiciliary foreign personal representative.

The fact that the Maine Probate Code devotes an entire article to foreign personal representatives but does not purport to regulate their duties or liabilities calls into doubt the

12

Respondent's position that the title 36 Maine estate tax statutes authorize the Assessor to impose personal liability on foreign personal representatives.

In fact, just as the Probate Code differentiates between personal representatives appointed by Maine courts under Maine law on the one hand and foreign personal representatives on the other hand, so do the Maine estate tax statutes. They exclude foreign personal representatives from the very definition of "personal representative."

Maine's estate tax chapter defines "personal representative" as follows:

"Personal representative" means the personal representative of the decedent or, if there is no personal representative appointed, qualified and acting within this State, any person who is in the actual or constructive possession of any property included in the gross estate of the decedent.

36 M.R.S. § 4062(5)

The plain meaning of the definition of "personal representative" is that it does not extend beyond personal representatives "appointed, qualified *and* acting in Maine," i.e., personal representatives of estates being administered, or at least being administered locally, in Maine. Is a domiciliary foreign personal representative "appointed" in Maine? The Maine Probate Code suggests not. *See* 18-A M.R.S. § 4-101 (definition of "local personal representative" includes "any personal representative appointed in this State pursuant to *appointment proceedings described in Article III* and excludes foreign personal representatives who acquire the power of a local personal representative pursuant to section 4-205") (emphasis added).

Even Petitioner can be deemed "appointed" in Maine, it is only by virtue of filing her Massachusetts appointment papers with the Lincoln County Probate Court in April 2011. By making that filing, Petitioner automatically acquired the authority she needed to sell the small

13

parcel. [6] *See* Respondent's Response to Order on Further Briefing, Attachment A. Thus, if Petitioner were appointed, the appointment covered only the transaction Petitioner subsequently completed: the sale of the small parcel, the proceeds of which were paid to the State toward estate taxes.

The Respondent in his supplemental brief suggests that the section 4062(5) definition of "personal representative" should be construed for purposes of personal liability to include foreign personal representatives like Petitioner, to avoid an absurd, inconsistent or illogical result. Respondent's Response to Order on Further Briefing at 8.[7] What in fact seems illogical is the argument that the Legislature would define "personal representative" and "foreign personal representative," separately in the Probate Code but would conflate the two in the title 36 estate tax definitions. Equally improbable is the underlying postulate that the Maine estate tax statutes constitute a freestanding scheme governing the liability of foreign personal representatives *sub silentio* in a manner eschewed by the Maine Probate Code.

In any event, to construe the title 36 estate tax statutes to include foreign personal representatives within the definition of "personal representative" still begs the ultimate

---

[6] A foreign personal representative can acquire authority to act in Maine as a domiciliary foreign personal representative by filing "authenticated copies of his appointment, of any official bond he has given and a certificate, dated within 60 days, proving his current authority." *See* 18-A M.R.S. § 4-204.

[7] One argument the Respondent does not make is that the Petitioner fits the other prong of the section 4062(5) definition of "personal representative": "any person who is in the actual or constructive possession of any property included in the gross estate of the decedent." Even had it not been waived, the argument would not succeed for at least two reasons. First, to interpret Maine law to regulate the Petitioner's liability as if she were just "any person," ignoring her status as a foreign personal representative, is a *sub rosa* means of ousting Massachusetts law, which does govern her liability. Second, that prong of the section 4062(5) definition must be construed to deem a "person who is in the actual or constructive possession" of estate property to be a "personal representative" only to the extent of estate tax due on property possessed by the person. Otherwise, the possessor of a single item could be held personally liable for tax on the entire estate—an absurd result. The stipulated record indicates that the only Maine property of the estate that Petitioner has actually or constructively possessed while administratrix is the small parcel she sold in 2011, and she has paid any tax due on that sale.

14

question—which state's law governs Petitioner's personal liability as administratrix of a

Massachusetts estate?

D. Petitioner's Personal Liability as Administratrix Is Governed by Massachusetts Law and Is to be Adjudicated by a Massachusetts Court

The general rule is that issues regarding the powers, duties and liabilities of personal

representatives are decided under the law of the state in which the personal representative is

appointed. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 316.

The corollary to that principle is that

> where a court of one state grants a specific authority to an individual, whether as administrator of an estate or guardian of a ward, the authority vested in that person remains confined to the state in which the appointment was made; no other tribunal has the authority to reach beyond the confines of its own territory to order the individual to take any given action, . . . ."

*Hetman v. Schwade*, 2009 Ark. 302, 317 S.W.3d 559, 565 (Arkansas court order directing

guardian appointed by a Pennsylvania court to perform accounting vacated for lack of

jurisdiction). *Cf. Schwartz v. Gerhart*, 44 Ore. 425, 427 (1904) ("It is undoubtedly a well-

established principle of law that a trustee appointed by a foreign court is amenable only to that

court, and the fact that his residence is in another jurisdiction will not confer authority there to

control the administration of his trust, or to require accountability for the trust property.")

In *Vaughan v. Northup*, the United States Supreme Court said, "the administrator [of an

estate] is exclusively bound to account for all the assets which he receives, under and in virtue

of his administration, to the proper tribunals of the government from which he derives his

authority; and the tribunals of other states have no right to interfere with or to control the

application of those assets, according to the *lex loci*." 40 U.S. 1, 4 (1841) (Story, J.). *See also*

*Roberts v. Roberts*, 71 Md. 1, 7-8, 17 A. 568, 570 (1889) (claim of personal liability against

executor had to be brought in the court where estate was being probated); *Appleton Estate, 1951*

*Pa. Dist. & Cnty. Dec. LEXIS 199, 81 Pa. D. & C. 85* (legatee's claim of personal liability against

15

executor had to be brought in court of domiciliary jurisdiction).

Admittedly, the Assessor has not given any explicit "order" to Petitioner of the kind in *Hetman* or explicitly sought to "control the application of assets," as in *Vaughan*. But the imposition of personal liability upon her has the same effect. The Respondent's position boils down to the proposition that Petitioner should be held personally liable because she had sufficient assets under her control to pay the Maine estate tax due but used the assets to make other payments instead. The Assessor thus implicitly determined that the Maine estate tax claim had priority and should have been paid first, and that the Petitioner is personally liable for failing to pay. In that light, the Assessor's determination can only be viewed as an assertion of authority to "control the application of assets, according to the *lex loci*," within the meaning of *Vaughan v. Northup, supra.*

To accept Respondent's position would mean that any personal representative of an estate in which the situs of assets and debts transcend state lines would be subject to personal liability in any jurisdiction where estate property was located. Under the Respondent's view of the law, whenever estate tax was owed in different jurisdictions, each jurisdiction could assert that its claim had priority over other claims and hold a foreign personal representative personally liable under its own laws for failing to pay the tax due in that jurisdiction. "Who would become an administrator if thus liable to suits? Who would be rash enough to become the security of an administrator, if he is to be affected by each of these judgments?" *Jackson v. Johnson,* 34 Ga. 511, 521 (1866).

An instructive case involving a similar effort to hold a foreign estate fiduciary personally liable for state estate tax is *Goodrich v. Rochester Trust & Safe Deposit Company,* 160 N.Y.S. 454 (N.Y. App. Div. 1916). The defendant trust company was executor of the estate of a New York decedent who owned "bonds and mortgages" on real estate in Michigan. *Id.* at

16

455. Probate of the estate occurred in New York, with the trust company appointed executor by that court. *Id.* at 455-56. Meanwhile, the decedent's son was appointed administrator in a probate proceeding in Michigan for the purpose of the Michigan property. *Id.* The son collected the Michigan mortgage payments and sent them to the trust company, for distribution to the estate beneficiaries. When the son applied to be discharged as administrator in Michigan, he learned that transfer tax was due to the State of Michigan, and that he was personally liable for the unpaid tax. He sued the trust company for indemnification in New York, and the trial court determined that the trust company was personally liable. *Id.*

The grounds for the trial court decision were summarized in the appellate opinion:

The findings upon which this liability is predicated are, in substance, that by the terms of the will and the laws of Michigan the trust company as executor became primarily liable for the payment of the tax; that the decree of the Probate Court in Michigan assessing the tax is entitled to full faith and credit and is conclusive upon the parties to this action, and that upon payment of the tax and interest plaintiff became subrogated to the rights of the State of Michigan to enforce the collection of the tax from the defendant trust company.

It appears that before either plaintiff or the defendant trust company had actual notice or knowledge that the transfer tax was or would be due to the State of Michigan the defendant trust company was discharged as executor after serving as such for about nine years, and that when plaintiff first discovered that there would be such a tax defendant trust company then had no funds of the estate in its hands as executor.

The decision, therefore, fixes upon the trust company personal liability, because of the supposed duty resting upon it of which it was not, in fact, advised or aware at the time it settled its accounts as executor and obtained its discharge as such. The effect of the decision is that the defendant trust company became personally liable to the State of Michigan for the tax and that that liability is not only in its representative capacity as executor, but survives and continues as a personal liability after its discharge as executor.

160 N.Y.S. at 456-57.

The Appellate Division reversed the trial court decision in the following terms:

The statute of Michigan could not operate beyond the borders of that State to fix a personal liability upon an executor in this State. Its application clearly is to executors and administrators in the State of Michigan and not elsewhere.

17

160 N.Y.S. at 457 (citations omitted).[8]

## Conclusion

The principle that a state's regulation of the personal liability of estate fiduciaries does not extend beyond those who are accountable within its borders means that Maine law governing personal liability of personal representatives applies to the estate of a non-resident decedents only to the extent it is administered and a personal representative is appointed in Maine. The Maine Probate Code confirms that very point. *See* 18-A M.R.S. § 4-207.

Maine law does not permit either the Respondent or this court to adjudicate the Petitioner personally liable as administratrix of an estate governed by Massachusetts law and supervised by a Massachusetts court. By issuing a Notice of Assessment directly against the Petitioner, the Respondent acted in excess of its authority.

For the reasons stated, it is ORDERED AND ADJUDGED as follows: The Petitioner's appeal is sustained. The Respondent's Decision on Request for Reconsideration dated January 24, 2011 is vacated, and the Notice of Assessment against Petitioner dated July 9, 2010 is hereby declared void and of no effect. The Clerk shall enter judgment for Petitioner Judy A. S. Metcalf against the Respondent Maine State Tax Assessor. Petitioner is awarded her costs.

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this order by reference in the docket.

Dated April 3, 2012

_____
A. M. Horton
Justice, Superior Court

---

[8]  The court went on to conclude that the son was entitled to indemnification by the beneficiaries who had received the mortgage payments for his personal liability as Michigan administrator for the unpaid tax. *Id.* at 458. One difference between that case and this one is that the trust company in *Goodrich* never acted in the State of Michigan, whereas the Petitioner has acted in Maine as a domiciliary foreign personal representative. The distinction may be relevant to personal jurisdiction but is irrelevant on the issue of personal liability.

18

Date Filed __02/22/2011__  __SAGADAHOC__  Docket No. __AP-11-3__
                              County

Action ____80C   APPEAL____



JUDY A.S. METCALF                    STATE TAX ASSESSOR